Hon. Franklin E. White Commissioner New York State Department of Transportation
This is in response to your request for an opinion of the Attorney General on whether the divisible load permits which will be issued by the Department of Transportation under the 1985 amendment to section 385(15) of the Vehicle and Traffic Law comply with grandfathering rights under the Federal-Aid Highways Law, 23 U.S.C. § 127. The amendment, L 1985, ch 549,* authorizes the Department to issue special permits for divisible loads which will allow trucks to exceed State and Federal weight limits, and establishes maximum weight ceilings for which trucks may be allowed to operate under special permit. You are concerned that if the issuance of such permits does not comply with the grandfathering provision, Federal appropriations for interstate highway construction and improvement will be jeopardized.
Section 127 of Title 23 of the United States Code provides that Federal highway appropriations shall be withheld from any State that permits use of the interstate highway system by vehicles with weights exceeding the greater of Federal weight limitations or corresponding State limitations or corresponding State limitations under laws or regulations established by appropriate State authority in effect on July 1, 1956, or in the case of overall gross weight on any group of two consecutive axles, on January 4, 1975. This provision deals only with specific weight limitations. In addition to "grandfathering" corresponding State weight limits in effect on specified dates, section 127 contains a second grandfathering provision which is relevant to the issuance of special permits:
 "This section shall not be construed to deny apportionment to any State allowing the operation within such State of any vehicle or combinations thereof which the State determines could be lawfully operated within such State on July 1, 1956, except in the case of overall gross weight on two or more consecutive axles on [January 4, 1975]".
Thus, analysis of whether issuance of permits under the 1985 amendment to the Vehicle and Traffic Law complies with grandfathering rights under the Federal-Aid Highways Law must begin with an analysis of the extent to which overweight vehicles "could be lawfully operated" in this State on July 15, 1956.**
As of that date, the Department of Transportation's predecessor, the Department of Public Works, had the authority to issue special permits for the operation of vehicles on the State's highways in excess of statutory limitations pursuant to then subdivision 17 of section385 of the Vehicle and Traffic Law, which read, in pertinent part:
 "Upon application in writing and good cause being shown, the superintendent of public works may issue a permit to operate or move a vehicle or a combination of vehicles, the weights or the dimensions of which exceed the limitations provided for in this section upon any highway under his jurisdiction; provided, however, that no such permit may be issued to include a towing operation involving more than two vehicles, except during storms, floods, fires or other public emergencies. Every such permit may designate the route to be traversed and contain any other restrictions or conditions deemed necessary by the superintendent."
We have already issued an opinion concluding that "on July 1, 1956, the Superintendent of Public Works had the authority to issue permits for loads in excess of the statutory limitations whether or not such loads were divisible" (1979 Op Atty Gen 74, 77). Our conclusion rested upon the absence of any restrictive language in the authorizing provision, and upon the subsequent enactment of chapter 735 of the Laws of 1977, which prohibited the issuance of overweight permits for divisible loads, thereby indicating that the superintendent previously had the power to do so. The legislative history did not suggest a contrary conclusion. Furthermore, as of July 15, 1956, there were no statutory maximum weight limitations circumscribing the superintendent's authority to issue special permits for divisible overweight vehicles. The sole statutory limitation on that authority* was that such permits could be issued only "[u]pon application in writing and for good cause being shown". The superintendent's authority to limit routes or establish other conditions for special permits was discretionary. There were no published regulations effective on July 15, 1956 establishing maximum weight limitations for recipients of special permits.
Having determined the scope of the superintendent's authority in 1956, the question becomes whether it is necessary, for defining what is grandfathered pursuant to section 127 of the Federal-Aid Highways Law, to ascertain the extent to which special permits were actually issued on July 15, 1956. We conclude that the phrase "could be lawfully operated" in the grandfathering provision, as amended in 1982, covers vehicles for which the superintendent had authority to issue special permits on that date, regardless of whether such permits were actually issued for operation on State highways prior to that date.
Courts in other states had reached the same conclusion even prior to the 1982 amendments. In State of Montana, ex rel. Dick Irwin, Inc. vAnderson, 525 P.2d 564 (1974), the Montana Supreme Court addressed whether the issuance of special permits for overweight divisible loads of up to 105,500 pounds pursuant to statutory amendment in 1967 would jeopardize the state's right to receive Federal highway funds. The court held that in 1956 the laws of Montana authorized the issuance of special hauling permits for both divisible and nondivisible loads, and that such permits could be issued now without jeopardizing Federal funds notwithstanding the state highway commission's former policy in existence in 1956 of not granting special permits for divisible loads.
Similarly, in South Dakota Trucking Assoc. v South Dakota Dept. ofTransporation, 305 N.W.2d 682, 686-687 (1981), the South Dakota Supreme Court held that the state transportation board could routinely issue special permits for overweight vehicles based on grandfathered statutory authority in existence in 1956, regardless of whether such permits were routinely issued in 1956, without jeopardizing Federal funds. In a case involving a challenge to the Federal Highway Administration's regulations, the Federal District Court in South Dakota, in an unreported decision, recently approved the South Dakota Supreme Court's holding.Janklow v Dole, Civ 84-4268 (SDSD, June 17, 1985).
We have uncovered nothing in the legislative history of the 1956 legislation itself which discloses that Congress expressly considered the applicability of the grandfathering provision to the states' then existing special permit authority. But the grandfathering provisions have been considered by Congress over the years and amended. The Act's subsequent legislative history supports the conclusions that special permit practices are grandfathered if there was statutory or regulatory authority to issue such permits in 1956.
Through the latter part of the 1960's and the 1970's, Congress became increasingly aware that the states were permitting the routine operation of overweight vehicles pursuant to special permit authority which the states claimed was grandfathered under section 127.* In 1979, the Comptroller General of the United States also flagged the problem to Congress' attention in a report entitled "Excessive Truck Weight: An Expensive Burden We Can No Longer Support" (hereinafter referred to as the GAO report). The GAO report expressed grave concern that abusive special permit practices were prematurely damaging the Federal-aid highway system and criticized the Federal Highway Administration (FHWA) for its passive acceptance of the broad interpretation that the states had given to section 127. Some states had taken the position that if the state had general authority in 1956 to enact laws or promulgate rules and regulations governing the issuance of special permits, such authority was grandfathered by section 127. The Comptroller General maintained that only that authority which was in fact exercised in 1956 was grandfathered (pp 42, 102). The GAO Report recommended repeal of the grandfather provision applicable to special permitting practices "on the grounds that there are serious interpretive and legal problems, including questions of constitutional dimensions, that render impracticable an independent Federal determination whether a particular state authorized trucks to operate at higher than Federal limits as of July 1, 1956" (pp 47-48, 101-103).
Congress, reacting to the testimony and reports of widespread use of special permit practices to circumvent Federal weight restrictions, enacted as part of the Surface Transportation Assistance Act of 1978 a provision directing FHWA to inventory annually the states' special permit practices and to submit to Congress annual reports of such inventories (Act of November 6, 1978, 92 Stat 2701, PL 95-599, Title I, § 123[b], [c]). In its 1981 annual report, entitled "Overweight Vehicles — Penalties Permits, An Inventory of State Practices", FHWA informed Congress that, in view of the GAO position that only special permit authority which was in fact exercised in 1956 was grandfathered, the grandfather clause is "unwieldy and archaic and makes the administration of weight control difficult" because documentation of the permit-issuing policies and practices circa 1956 "is generally nonexistent" (pp 2-3). Included in the 1981 report were copies of letters from FHWA to such states as Connecticut, Massachusetts, Montana, New Mexico, Ohio, Oregon, and South Dakota, in which FHWA, adopting the GAO position, expressed disapproval of those states' broad construction of the grandfather clause (pp 5, 22, 52-59, 62, 67-72, 80-82, 90-91, 93-97, 109-115).
Nevertheless, Congress rejected all proposals to repeal or curtail the grandfathering of special permit practices for divisible loads. See, e.g., GAO Report, supra, pp 101-103; Size and Weight Limitations for Vehicles Operating on the Interstate System, Hearings on S. 1402 Before Subcomm. on Surface Transportation of the House Comm. on Public Works and Transportation, 97th Cong. 2d Sess. 358, 366 (1982) (proposal by the American Association of State Highway Officials). Congress instead amended section 127 directing FHWA to defer to the states' determination
of grandfathered special permit practices (Surface Transportation Assistance Act of 1982, 96 Stat 2123, Pub Law 97-424). Senator Symms, who introduced the amendment, explained that the amendment was intended to resolve the dispute between the FHWA and the states, and specifically referring to the Montana Supreme Court decision, to make the state the final arbiter of their grandfather rights (128 Cong. Rec S. 14497, S. 15725 [Dec 16, 20, 1982, daily ed).* By giving the states discretion to determine the scope of the grandfathering provision, Congress implicitly approved the determinations by the states that funding would not be withheld where a state allows operation of overweight vehicles under special permit regardless of whether a similar permit was actually issued in 1956. As noted above, the Comptroller General in the GAO report and FHWA in its 1981 annual report advised Congress that innumerable difficulties would be encountered in attempting to reconstruct the extent to which special permits were actually issued thirty years ago and that records were likely to have been discarded, if they had been kept at all. In these circumstances, we do not believe that Congress, in adopting the 1982 amendment, expected the states to ascertain the extent to which such special permits were actually issued.
We are mindful that where a state had broad authority to issue special permits in 1956, unlimited by maximum weight ceilings, there is the potential for abusing that authority to circumvent Federal weight restrictions. We note, however, as did the South Dakota Federal District Court in Janklow v Dole, supra, that the states' interest in highway protection and safety is aligned with the Federal interest, a coincidence which militates against abuse of special permit authority. Furthermore, if states having broad special permit authority act contrary to Federal interest, Congress can amend the grandfathering provision. In 1982, it chose not to do so despite its awareness that the states construed section 127 as grandfathering their broad authority to issue special permits even through such authority had been exercised only to a more limited extent in 1956.
Having concluded that the grandfathering provision covers states that allow operation of vehicles which could have lawfully operated under special permit of 1956, whether or not such permits were actually issued, we have no difficulty finding that the issuance of special permits for divisible loads pursuant to the 1985 amendment to the Vehicle and Traffic Law is encompassed by the grandfathering provision. The 1985 amendment restores to the Department the same authority it had in 1956 to issue special permits for divisible loads, which authority had been withdrawn in 1977, but limits that authority by establishing maximum weight ceilings for various classes of vehicles and geographic areas. Inasmuch as the new law merely authorizes the Department to exercise a more circumscribed subset of the authority it had in 1956, issuance of special permits pursuant to the new law should not jeopardize Federal highway funding.
* Section 385(15) of the Vehicle and Traffic Law has been further amended by L 1985, ch 929, but the further amendment is not relevant to the issues discussed herein.
** The portion of section 127 that reads "except in the case of overall gross weight on two or more consecutive axles on [January 4, 1975]" pertains to the Federal bridge formula which was added by the Federal-Aid Highway Amendments of 1974. Pub L, No. 93-643, 88 Stat 2283
(Jan. 4, 1975). The provision thus grandfathers vehicles that exceed Federal bridge formula limits if such vehicles could be lawfully operated in the State on January 4, 1975.
The Department's, formerly the public works superintendent's, authority to issue special permits remained unchanged between 1956 and 1977. As the ensuing discussion concludes, the special permit authority in 1956 was not limited by statutory weight ceilings of any kind, including bridge formula limitations. The analysis contained in this opinion focuses on whether the issuance of special permits pursuant to the 1985 amendment is grandfathered with respect to the 1956 baseline date, but the analysis, and the conclusion reached, are equally applicable to whether such issuance is grandfathered with respect to the 1975 baseline date.
* The limitation pertaining to towing operations is not relevant to the question whether issuance of special permits for divisible loads will jeopardize Federal funding.
* See, e.g., Vehicle Weight and Dimension Limitations: Hearings on H.R. 11870 and H.R. 11619 Before Subcomm. on Roads of the House Comm. on Public Works, 91st Cong., 1st Sess. 122 (1969) (comment that nearly all states have special permit authority which was grandfathered by the 1956 law, and that one state issued 100,000 special permits per year in "almost wholesale avoidance of the law"), p 204 (response that there is a need for "second grandfather clause" to allow special permit practices for agriculture and industries that are vital to the economies of the individual states); pp 390, 420-428, 468-471, 481-494 (discussion of American Association of State Highway Officials' proposal to close loophole by repealing the grandfather clause as it relates to divisible-load special permit practices); Impact of Truck Overloads on the Highway Trust Fund, Hearings Before Subcomm. on Oversight of the House Comm. on Ways and Means, 95th Cong., 1st Sess. 99-101 (1977-1978) (testimony that Michigan routinely permits operation of 154,000-pound trucks) p 192 (testimony on impact on roads of routine issuance of overweight permits to coal haulers in certain areas of Virginia); Truck Sizes and Weights, Hearing on S. 1393, S. 1439, S. 1689 Before Subcomm. on Transportation of the Senate Comm. on Environment and Public Works, 96th Cong., 1st Sess. 34-36, 222-232 (1979) (statement of American Trucking Association representative Edward V. Kiley, discussing importance of continuing to grandfather special permit practices to states' economies, and that highways in such states are designed for higher weights), pp 63-65 (statement of Karl Bowers, Department of Transportation, explaining that several states had been informed that their special permit practices were not covered by the grandfather clause); Impact of Truck Overloads on the Highway Trust Fund, Hearings Before Subcomm. on Oversight of the House Comm. on Ways and Means, Vol II, 96th Cong., 1st Sess. 3 (1979) (Chmn. Gibbons, describing the states' use of grandfathered special permit authority to circumvent Federal weight limits as "completely out of hand") pp 111-113, 148 (testimony from representatives of National Independent Truckers and American Truckers Association that overweight permits are necessary and have not damaged the highways).
* Contrast the Senate bill with House bill, H.R. 6211, proposing to amend section 127 to read "which the State determines, after consultationwith the Secretary, could be lawfully operated in such State on July 1, 1956" (emphasis added). The underscored phrase was intended to require states, during consultation, to provide documentation and other information to demonstrate the basis for its determination. See H.R. Rep. No. 555, 97th Cong., 2d Sess. 23 (1982), 128 Cong. Rec. H. 8917 (Dec 6, 1982 daily ed) (remarks of Rep. Anderson). The more deferential Senate language, however, was adopted.